UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
(at Covington)

| | |
|---|---|
| SHERI SCHOUT, on behalf of D.S., a minor, | )<br>)<br>) |
| Plaintiff, | ) Civil Action No. 2: 23-091-DCR<br>) |
| V. | )<br>) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | ) **MEMORANDUM OPINION**<br>) **AND ORDER**<br>) |
| Defendant. | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Sheri Schout, on behalf of D.S., a minor, has filed a *pro se* motion to establish a mental disability for the purpose of obtaining Social Security benefits. [Record No. 9] She contends that the decision of Administrative Law Judge ("ALJ") Thuy-Anh T Nguyen is not supported by substantial evidence. [Record No. 12] However, the Commissioner's decision will be affirmed because the ALJ reasonably relied on the evidence of record from professional evaluators and properly applied relevant law.

**I.**

Plaintiff Schout filed a claim for Supplemental Security Income ("SSI") on behalf of D.S. on September 20, 2020. *See* 20 C.F.R. §§ 416.200, 416.202(g). D.S. was six years old at the time. [*See* Administrative Transcript at p. 141; hereafter, "Tr."] Schout claimed that her son suffered from disabilities that qualified him for additional benefits, including Attention-Deficit/Hyperactivity Disorder ("ADHD"), Tourette's syndrome, and other issues impacting his behavior, learning capacities and speech. [Tr. 141-45, 159]. After the Social Security Administration ("SSA") denied Schout's application, she pursued and exhausted available

administrative remedies. [Tr. at pp. 1-6 (Appeals Council denial of review), 12-32 (ALJ decision), 33-52 (ALJ hearing), 53-59 (initial denial), 60-72 (reconsideration denial)].

## II.

The ALJ applied the Commissioner's three-step childhood sequential evaluation process and found that D.S. did not qualify as a disabled minor.[1] [Tr. 15-28] A disabled minor is an individual under the age of 18 who has an impairment or combination of impairments which meets, medically equals, or functionally equals a Listing of Impairments ("Listing") that is expected to last longer than twelve months. *See* 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.924(a).[2] Even if a child's impairment or combination of impairments does not meet or medically equal a Listing, a claimant may be able to show that the impairments result in limitations that functionally equal a Listing. *See* 20 C.F.R. § 416.926a.

In assessing whether a child's impairments equal a Listing, the ALJ considers the child's functioning in six domains:

(1) acquiring and using information;

(2) attending and completing tasks;

---

[1] The SSA uses a three-step sequential evaluation process is used to determine whether a claimant under age 18 is disabled. The three steps are: (1) Is the claimant engaging in substantial gainful activity? (2) Does the claimant have an impairment or combination of impairments that is severe? (3) Does the claimant's impairment or combination of impairments meet, medically equal, or functionally equal a listed impairment? If it is determined that the claimant is not disabled at step 1 or 2 of the evaluation process, the evaluation ends at that step. *See* 20 CFR 416.924(a)).

[2] The Listing of Impairments describes impairments considered severe enough to cause marked and severe functional limitations for the purpose of qualifying for Supplemental Security Income as a child under age 18. *See* Disability Evaluation Under Social Security, https://www.ssa.gov/disability/professionals/bluebook/listing-impairments.htm (last visited December 18, 2023).

  (3) interacting and relating with others;

  (4) moving about and manipulating objects;

  (5) caring for oneself; and

  (6) health and physical well-being.

20 C.F.R. § 416.926a(b)(1). If a child's impairment or impairments result in "marked" limitations (i.e., limitations that seriously interfere with the child's ability to perform activities) in at least two domains, or an "extreme" limitation (i.e., a limitation that very seriously interferes with the child's ability to perform activities) in at least one domain, the impairment or impairments functionally equal a Listings and he or she will be declared as disabled.[3] *See* 20 C.F.R. § 416.926a(d).

  The ALJ found that D.S. had severe speech disorder, mood disorder, oppositional defiant disorder, Attention-Deficit/Hyperactivity Disorder ("ADHD"), and Tourette's syndrome. [Tr. 16] But after applying the evidence under the above criteria, the ALJ found that D.S.'s impairments "did not meet, medically equal, or functionally equal a Listing." [Record No. 11] [Tr. 16-25] In particular, the ALJ found that D.S. had a marked limitation in only acquiring and using information; less than marked limitations for attending and

---

[3]  An impairment is "marked" if the impairment(s) interferes seriously with the child's ability to independently initiate, sustain, or complete domain-related activities. Day-to-day functioning may be seriously limited when the child's impairment(s) limits only one activity or when the interactive and cumulative effects of the child 's impairment(s) limits several activities. On the other hand, an impairment is "extreme" if the impairment(s) interferes very seriously with the child's ability to independently initiate, sustain, or complete domain-related activities. Day-to-day functioning may be very seriously limited when the child's impairment(s) limits only one activity or when the interactive and cumulative effects of the child's impairment(s) limit several activities. The extreme label describes the worst limitations, but it does not necessarily mean a total lack or loss of ability to function. [Record No. 1]

completing tasks, interacting with and relating to others, as well as caring for himself; and no limitations in moving about and manipulating objects or health and physical well-being. [Tr. 23-25] Because D.S. did not have at least two marked limitations or one extreme limitation, his case did not functionally qualify as a Listing. Therefore, the ALJ found that D.S. did not qualify as a disabled minor. [Tr. 28] Schout disagrees with this assessment, and her brief, styled as a letter, seemingly claims that the ALJ mistakenly concluded that D.S.'s impairments fail to rise to the level of "marked" or "extreme" in at least one of the domains where she concluded that a less than marked limitation exists.[4]

### III.

A court reviewing a decision by an ALJ is not empowered to conduct a *de novo* review, resolve conflicts in evidence, or decide questions of believability. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012). Rather, if the Court finds substantial evidence to support the judgment, it must affirm that decision even if it would have decided the matter differently. [*Id.* at 714] The Supreme Court has instructed that,"[o]n judicial review, an ALJ's factual findings . . . shall be conclusive if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1153 (2019) (quoting 42 U.S.C. § 405(g)). This means that the threshold for evidentiary sufficiency under the substantial evidence standard is a fairly low bar. *See Hickey-Haynes v. Barnhart*, 116 F. App'x 718, 726 (6th Cir. 2004). The bar is met if "a reasonable mind might accept the relevant evidence as adequate to support a conclusion."

---

[4] Schout also claims that the ALJ may have erred in this case because the opinion mentioned that she had limited experience processing supplemental security income claims for minors. But Court is not aware of (and Schout did not cite) any authority that would compel reversal of the Commissioner's decision or a remand of a matter for additional proceedings based on an ALJ's lack of experience handling this specific type of claim.

*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citation and internal quotations omitted).

This Court construes plaintiff's filings liberally given her *pro se* status. *See Parrella v. Comm. of Soc. Sec.*, 2019 WL 1970532, at *1 (S.D. Ohio May 3, 2019) (citing *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985)). Even still, *pro se* litigants must raise the issues they wish to present, attempt to develop arguments, and follow the same procedural rules that govern other litigants. *See Wilson v. Comcast Cable Comms. Mgmt., LLC*, 2016 WL 11782544, at *1 (6th Cir. Mar. 18, 2016) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)); *Stadford v. Social Security*, 2023 WL 3978326, at *1 (N.D. Ohio June 13, 2023).

## IV.

Schout spends a significant portion of her brief recounting the same evidence that the ALJ considered in her decision. And rather than identify overlooked or undervalued evidence, Schout's recites similar allegations but reaches a different conclusion than the ALJ judge who found that D.S. does not experience marked or extreme limitations in the domains of attending and completing tasks, interacting with and relating to others, and his ability to care for himself. In just one domain, the ALJ found that D.S. suffers from a marked limitation of acquiring and using information—a determination that Schout seemingly does not challenge. However, this Court's role on review is to determine whether substantial evidence supported the ALJ's decision, not whether the undersigned would have made the same findings in the first place. *See Longworth*, 402 F.3d at 591-595. As such, this Court will consider the evidentiary body used to conclude that Schout's son, D.S., only exhibited marked limitations in one domain, falling short of the threshold necessary to qualify as a disabled minor for the purpose of receiving Supplementary Security Income.

**Acquiring and Using Information**

The ALJ assesses in this domain "a child's ability to learn information and to think about and use the information." Social Security Ruling (SSR) 09-3p, *available at* 2009 WL 396025, at *2.  As the Commissioner notes,

> [t]ypically, school-age children age 6 through 12 like D.S. (1) learn to read, write, and do simple arithmetic, (2) become interested in new subjects and activities, (3) demonstrate learning by producing oral and written projects, solving arithmetic problems, taking tests, doing group work, and entering into class discussions, (4) apply learning in daily activities at home and in the community, and (5) use increasingly complex language to share information, ask questions, express ideas, and respond to others.

[*Id*. at *6]  After reviewing medical reports, questionnaires from D.S.'s teachers, testimony from Plaintiff Schout, and the academic assistance plan put in place by D.S.'s school, the ALJ concluded that D.S. had a "marked" limitation in this domain. [Record No. 11]  Specifically, the ALJ noted that "[c]laimant's impairments cause marked restriction in understanding, remembering, or applying information." [*Id*.]  As a result of his inability to acquire and use information, D.S.'s first grade teacher "indicated that he does not always complete his work." [*Id*.]  This assessment comports with Dr. Michael McIntosh's response to the "Child's Mental Impairment Questionnaire" completed on September 16, 2021, where D.S.'s evaluating doctor noted that "without medications [he] can't function in [a] school setting." [*Id*.]  However, the ALJ noted "that [D.S.'s] full-scale IQ score fell within the borderline range but was considered somewhat of an underestimate and observing that his reading score fell in the low average range and his math score fell in the high average range."  [Tr. 23] Although Schout does not challenge the ALJ's determination under this domain, it is the only one where the ALJ concluded that D.S.'s impairments "interfere[] seriously with the child's abilit[ies]." [*Id*.]

-6-

Substantial evidence supports the finding of a marked limitation, rendering the ALJ's determination under this domain conclusive.

### Attending and Completing Tasks

Under this domain, an ALJ considers "how well a child is able to focus and maintain attention, and how well he begins, carries through, and finishes his activities, including the pace at which he performs activities and the ease with which he changes them." *See* 20 C.F.R. § 416.926a(h); *see* SSR 09-4p. As the Commissioner notes, "school-age child should be able to focus his attention in a variety of situations in order to follow directions, remember and organize his school materials, and complete classroom and homework assignments." [Record No. 11]; *see* 20 C.F.R. § 416.926a(h)(2)(iv). In addition, a child of D.S.'s age "should be able to concentrate on details and not make careless mistakes in his work (beyond what would be expected of other children his age)" as well as "be able to change his activities or routines without distracting himself or others." [*Id*.]

Schout testified that, while at home, she has to ask D.S. "to complete tasks such as bathing and brushing his teeth." [Record No. 1] She also alleged that the D.S. sometimes will not get dressed because he refuses to go to school and that he sometimes "refuses to go to sleep unless she lays down with him." [*Id*.] In general, Schout claims that D.S. is "unable to fully understand" directions and "has to be told instructions over and over" before "[sit[ting] down and doing his work" because of his Attention-Deficit/Hyperactivity Disorder. [Record No. 1-1] Schout notes that the "only way he will get [chores or homework] done" is when adult is "right there with him every time to make him finish or it would never get done or completed." [*Id*.]

However, the ALJ found that D.S. had less than marked limitations in this domain. In support, the ALJ observed that the findings from a consultative psychological examination that showed D.S. "appeared to experience attentional deficits and limited motivation to persist with [only] some tasks." [Tr. 23, citing Tr. 300, 303] This led examiner P. Leanne Scott to suggest that D.S. suffered from slight to moderate limitations. [*Id.*] Although Schout cites a recorded history of behavioral, compliance, and task-completing issues at school, the ALJ noted that "D.S.'s teachers documented only slight to obvious problems in the areas of attending and completing tasks—although the second-grade teacher suggested a serious problem completing work accurately without careless mistakes." [Record No. 11] His deficiencies in math and reading led D.S.'s school to implement a "504 plan" designed to "assist with difficulties" in these areas in January 2022. [Record No. 1-1] On the medical side, the ALJ "noted that Dr. McIntosh stated in March 2022 that D.S. was doing okay for the most part" and that Schout had separately "indicated [D.S.'s] ability to focus was off and on." [Tr. 24, citing Tr. 322]. Finally, after reviewing a speech and language evaluation by Linda Gregory, the ALJ observed that D.S. even had some ability to "follow[] routine and novel directions, manage[] verbal and nonverbal tasks, and underst[and] and use[] vocabulary." [Record No. 11]

Based on these considerations, the ALJ's conclusion that D.S. experiences a less than marked limitation in this domain is supported by substantial evidence.

### Interacting with and Relating to Others

The ADJ found D.S. suffers from a moderate limitation in interacting with others. In this domain, the ALJ considers "a child's ability to initiate and respond to exchanges with other people, and to form and sustain relationships with family members, friends, and others." SSR 09-5p, available at 2009 WL 396026, at *2. The majority of a child's social interactions are

considered here, as well as a child's response to people in authority, compliance with rules, and speech and language skills. [*Id.*] Under this framework,

> [s]chool-age children like D.S. are expected to (1) develop more lasting friendships with same-age children, (2) increasingly understand how to work in groups to create projects and solve problems, (3) increasingly understand another's point of view and tolerate differences, (4) attach to adults other than parents, and may want to please them to gain attention, and (5) share ideas, tell stories, and speak in a manner that can be readily understood by familiar and unfamiliar listeners.

[*Id.* at *6]

Despite occasional behavioral problems, "the claimant has generally demonstrated an ability to understand and respond to social cues (physical, verbal, emotional), and communicate within the classroom setting." [Record No. 1-11] The ALJ also noted that "he was also able to keep social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." [*Id.*] But Schout claims that D.S. "would start to scream and start having really bad panic attacks when he was in a crowd of people." [Record No. 1] She also documented multiple behavioral episodes where D.S. made threatening statements and took harmful actions against classmates that he viewed as humorous, seemingly characterizing a child incapable of publicly interacting with others in a positive manner. [*Id.*]

Notwithstanding these claims, the ALJ noted that D.S.'s teachers described only "slight to obvious problems" in this domain. [Tr. 189, 220, 233] The ALJ observed that although D.S.'s behavior at school has required intervention at times by school officials, it has yet to result in suspension or other serious disciplinary action. [Tr. 24]

As for D.S.'s communicative abilities, the ALJ relied upon a speech evaluation from Linda Gregory as mentioned earlier. [Record No. 11] This evaluation implied that D.S.'s difficulty staying focused may have negatively impacted his lower language scores, but

Gregory noted that "his articulation skills were still within normal limits." [*Id*.] And as the ALJ noted,

> during the evaluation, D.S. followed routine and novel directions, understood and used vocabulary, related experiences in a concise and sequential manner, showed communicative intent, did not display any outbursts or have a tantrum, and had fluent, intelligible, and appropriate speech.

[*Id*.] While D.S. may suffer from social anxiety and other limitations that impact his ability to interact with others compared to children his age, the ALJ based her determination on substantial evidence to support the finding that his impairments in this domain does not rise to the level of marked or extreme.

### Ability to Care for Himself

This domain considers how well a child maintains a healthy emotional and physical state. This involves analyzing how the child independently meets his or her physical and emotional needs, how the child copes with stress and environmental changes, and whether the child takes care of his or her own health, possessions, and living area. *See* 20 C.F.R. § 416.926a(k); SSR 09-7p. Schout cites a variety of shortcomings in D.S.'s independence, including his inability to complete basic chores, change his clothes, and sometimes even sleep alone. [Record No. 1] To this effect, the ALJ found that D.S. is "moderately restricted in his ability to adapt or manage himself." [*Id*.] However, the ALJ found that "there is no objective evidence of significant problems responding to demands, adapting to changes, or distinguishing between acceptable and unacceptable performance in community[or] school-related activities." [*Id*.] And in at least one observation, the ALJ emphasized that "the claimant's second-grade teacher [in December 2021] noted no problems caring for his physical needs, using good judgment, or identifying and appropriately asserting his emotional needs"

other than managing his frustration. [*Id.*] In addition, the ALJ acknowledged that "there was no evidence that D.S. engaged in self-injurious behavior or did not spontaneously pursue enjoyable activities." [Record No. 11] The ALJ's finding that D.S. had some but less than a marked limitation in the ability to care for himself is supported by substantial evidence.

Schout does not challenge the ALJ's determinations that in the domains of "moving about and manipulating objects" and "health and physical well-being" D.S. experiences no limitations. To be sure, however, this Court finds that the ALJ likewise relied upon substantial evidence to reach her conclusions in each of those domains.

V.

Based on the foregoing discussion and analysis, it is hereby

**ORDERED** that the plaintiff's motion to establish a disability by reversing the Commissioner's decision or, in the alternative, remanding for further proceedings [Record No. 9] is **DENIED**.

Dated: December 21, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky